1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  MARK DARULIS,                          CASE NO. 08cv2344 DMS (RBB)

12                        Plaintiff,    **ORDER GRANTING IN PART
                                        AND DENYING IN PART
13       vs.                            DEFENDANT THOMAS SILVA'S
                                        MOTION FOR SUMMARY
14  SAN DIEGO POLICE OFFICER G. CLARK    JUDGMENT**
    #8644; A. BOLLIG #4565; HEARING
15  OFFICER JAMES COLDREN, J.C.         **[Docket No. 58]**
    TOWING, INC; BORDER AGENT SILVA,
16
                          Defendants.
17

18          This matter comes before the Court on Defendant Thomas Silva's motion for summary

19  judgment.  Plaintiff has filed an opposition to the motion and Defendant has filed a reply.  For the

20  reasons set out below, the Court grants in part and denies in part Defendant's motion.

21                                      **I.**

22                          **FACTUAL BACKGROUND**[1]

23          This case arises out of an incident at the San Ysidro Port of Entry on March 16, 2008.  Plaintiff

24  Mark Darulis was returning to the United States from Mexico on his motorcycle when he was directed

25  to proceed to the secondary inspection area.  Plaintiff complied with that order, and began pushing his

26  motorcycle to a parking stall.  Once inside a stall, Plaintiff parked his motorcycle and stood next to

27  ──────────────────────

28          [1]  The Court notes that some of the facts in this case are disputed.  For purposes of this motion,
    the Court assumes Plaintiff's version of the facts is true.  The facts set out below are consistent with
    Plaintiff's account of the incident.

it while waiting for an agent to arrive.  When Defendant Silva appeared, he told Plaintiff to sit on his motorcycle while he was waiting.  Plaintiff did not comply.  Another agent appeared and he and Defendant Silva handcuffed Plaintiff and took him into a security office.  Defendant Silva and the other agent then left the office.  Plaintiff remained at a counter in the office for approximately fifteen minutes.  During this time, he complained of shoulder pain, but he did not receive any medical treatment.  Defendant Silva then returned to the office and removed Plaintiff's handcuffs.  When he did so, he "jerked" Plaintiff's hands up towards the middle of his back.  After the handcuffs were removed, Plaintiff was subjected to a pat-down search, and he was fingerprinted and photographed. He was then allowed to leave the Port of Entry.  Within the next thirty minutes, Plaintiff's shoulder pain resolved.  Plaintiff did not seek any medical treatment.

On December 18, 2008, Plaintiff, proceeding *pro se*, filed the present case.  Liberally construed, the Complaint alleges claims for unlawful seizure in violation of the Fourth Amendment, excessive force in violation of the Fourth Amendment, and a Fifth Amendment due process violation.

## II.

## DISCUSSION

Defendant Silva moves for summary judgment on all of Plaintiff's claims on the basis of qualified immunity.

### A.  Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate.  *Celotex*, 477 U.S. at 324.  The opposing party's evidence is to be believed, and all

justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).  Instead, it must designate specific facts showing there is a genuine issue for trial.  *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own).  More than a "metaphysical doubt" is required to establish a genuine issue of material fact."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

**B.     Qualified Immunity**

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Claims of qualified immunity require the court to consider two questions: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and (2) whether the right was clearly established -- that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  *Saucier* required that courts consider these questions *seriatim*.  However, in *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808 (2009), the Court abandoned that approach in favor of a more flexible rule.  Now, rather than proceeding through the rigid two-step process, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818.

**1.     Unlawful Seizure**

The first claim at issue in this case is Plaintiff's claim that he was subjected to an unlawful seizure in violation of the Fourth Amendment.  Defendant argues Plaintiff was not seized, therefore there was no Fourth Amendment violation.  Plaintiff disagrees.

In determining whether a person was seized, thereby triggering the protections of the Fourth Amendment, courts must consider the totality of the circumstances.  *Washington v. Lambert*, 98 F.3d

1  1181, 1185 (9th Cir. 1996) (quoting *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990)).

2  These circumstances include:

3      both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and
       how much the plaintiff's liberty was restricted, . . . and the justification for the use of
4      such tactics, i.e., whether the officer had sufficient basis to fear for his safety to
       warrant the intrusiveness of the action taken.

5

6  *Id.*  In this case, the location of the stop is also important because "'the government has more latitude

7  to detain persons in a border-crossing context.'"  *United States v. Butler*, 249 F.3d 1094, 1100 (9th Cir.

8  2001) (quoting *United States v. Doe*, 219 F.3d 1009, 1014 (9th Cir. 2000)).

9      Here, Plaintiff alleges that he was standing next to his motorcycle in the secondary inspection

10  area when Defendant Silva approached him and "in a loud voice yelled at Darulis to get on his

11  motorcycle." (Opp'n to Mot. at 4.)  Plaintiff believed this was an unreasonable request, and thus he

12  refused to comply. (*Id.*)  Defendant Silva's supervisor then arrived on the scene and instructed Silva

13  to handcuff Plaintiff and take him to the security office.  Plaintiff states Defendant Silva then "tightly

14  and painfully handcuffed Darulis' hands behind his back and in a forceful manner took Darulis to an

15  office." (*Id.* at 5.)  Defendant Silva and his supervisor then left the office, and left Plaintiff, still

16  handcuffed, at a counter in the office. (*Id.*)  Ten to fifteen minutes later, Defendant Silva returned to

17  the office and removed the handcuffs. (*Id.*)  Silva thereafter "did a pat-down search on Darulis which

18  included Darulis having to remove his shoes, he was finger-printed, photographed and held in custody

19  after these procedures were finished." (*Id.*)  Plaintiff was then released and allowed to leave the port

20  of entry.

21      Although not identical, these circumstances are substantially similar to those in which the

22  Ninth Circuit declined to find there was an arrest.  For instance, in *United States v. Juvenile (RRA-A)*,

23  229 F.3d 737 (9th Cir. 2000), and *Doe*, 219 F.3d 1009, the Ninth Circuit "held that escorting an

24  individual to a security office and searching them for weapons and contraband ... was *not* an arrest[.]"

25  *United States v. Bravo*, 295 F.3d 1002, 1011 (9th Cir. 2002).  *Bravo* involved facts similar to those in

26  *RRA-A* and *Doe*, but also included "a handcuffed, 30-40 yard walk to the security office[,]" which the

27  court found did not turn the detention into an arrest.  *Id.  See also United States v. Zaragoza*, 295 F.3d

28  / / /

1   1025 (9th Cir. 2002) (declining to find an arrest where defendant was handcuffed during brief walk to

2   security office, patted down and searched).

3        Here, Plaintiff remained handcuffed not just for the walk to the security office, but also for the

4   ten to fifteen minute wait in the office.  However, that distinction does not warrant a different result.

5   Unlike the defendant in *RRA-A*, who was handcuffed to a bench, Plaintiff was not handcuffed to

6   anything in the office during that time.  Rather, he was sitting or standing at the counter unattended

7   by any particular person.  Under these circumstances, the Court cannot say that a reasonable, innocent

8   person "would believe that he is being subjected to more than the 'temporary detention occasioned

9   by border crossing formalities.'"  *Bravo*, 295 F.3d at 1009 (quoting *Butler*, 249 F.3d at 1100).

10       Nevertheless, Plaintiff asserts that his case is distinguishable from those discussed above

11  because unlike the defendants in those cases, he was not told that the handcuffs were temporary, that

12  they would be removed once inside the security office, or that he was not under arrest.  However, this

13  argument was raised and rejected in *Nava*.  *See* 363 F.3d at 945-46.  Plaintiff also argues those cases

14  are distinguishable because here "[t]here was no reasonable or articulable suspicion that Darulis

15  committed any crime."  (Opp'n to Mot. at 8.)  Whether the officers had such suspicions, however, is

16  not determinative.  Rather, the relevant inquiry is whether the officers were justified in handcuffing

17  Plaintiff while they completed their inspection.  Notably, Plaintiff does not dispute that he refused to

18  comply with Defendant's request that Plaintiff sit on his motorcycle, and that defiance, coupled with

19  the border-crossing context, was sufficient to warrant the handcuffs.  *See United States v. Burton*, 193

20  F.R.D. 232, 239 (E.D. Pa. 2000) (stating defendant's failure to comply with officer's order and

21  officers' need to perform a number of tasks that would divert their attention away from defendant were

22  factors supporting the use of handcuffs).  Finally, Plaintiff contends that his case is distinguishable

23  because unlike the defendants in the other cases, he was fingerprinted and photographed.  Those

24  activities, however, would not lead a reasonable, innocent person to believe "that he is being subjected

25  to more than the 'temporary detention occasioned by border crossing formalities.'"  *Bravo*, 295 F.3d

26  at 1009 (quoting Butler, 249 F.3d at 1100).  *See Rabbaa v. Chertoff*, 509 F.3d 89, 99 (2d Cir. 2007)

27  (concluding "that the fingerprinting and photographing of plaintiffs does not take the searches out of

28  / / /

the realm of what is considered routine because, at least in the context of a border search, being fingerprinted (even forcibly) and photographed is not particularly invasive[.]")

Under the circumstances presented here, this Court concludes Plaintiff was not seized within the meaning of the Fourth Amendment. It therefore follows that there was no violation of Plaintiff's constitutional rights. Accordingly, Defendant is entitled to qualified immunity from Plaintiff's first claim of unlawful seizure.

2.   Excessive Force

Plaintiff's second claim alleges Defendant Silva used excessive force in handcuffing Plaintiff. Defendant argues he is entitled to qualified immunity from this claim because Plaintiff's alleged injury is *de minimus*, and a *de minimus* injury does not support an excessive force claim. Alternatively, Defendant asserts it would not have been clear to a reasonable officer in his situation that the use of handcuffs was unreasonable.

In support of his first argument, Defendant cites a series of unpublished decisions from district courts within the Ninth Circuit. (*See* Mem. of P. & A. in Supp. of Mot. at 12-13.) Notably, Defendant fails to cite any binding authority to support his argument, and the Court has found none. Accordingly, the Court rejects Defendant's argument that there was no excessive force due to the nature of Plaintiff's alleged injuries.

The next issue this Court must address is whether it would have been clear to a reasonable officer that his use of force was unreasonable under the circumstances. *Saucier*, 533 U.S. at 202. As set out above, the circumstances in this case were as follows: Plaintiff was proceeding from Mexico to the United States through the San Ysidro Port of Entry. Plaintiff was directed to proceed to the secondary inspection area. He got off his motorcycle, pushed it to a parking stall, and stood beside it while waiting for an agent to arrive. Defendant Silva then told Plaintiff to sit on his motorcycle. Plaintiff refused. Defendant Silva then left the area and returned with another agent who told Defendant Silva to handcuff Plaintiff and take him into the security office. Defendant Silva then handcuffed Plaintiff's arms behind his back and forcefully took him to the office, where he remained in handcuffs for approximately fifteen minutes. Plaintiff alleges the handcuffing caused pain in his shoulder, that he told Defendant and the other agents about the pain, but they did not immediately

1   remove the handcuffs.  When Defendant Silva removed the handcuffs, he lifted Plaintiff's arms up

2   causing more pain to Plaintiff's shoulder.

3        Plaintiff argues it would have been clear to a reasonable officer confronted with this situation

4   that his use of force was unreasonable.  In support of this argument, Plaintiff cites *Meredith v. Erath*,

5   342 F.3d 1057 (9th Cir. 2003).  In that case, Internal Revenue Service agents were executing a search

6   warrant in an office building when they encountered the plaintiff, who lived on one floor of the

7   building.  The agents were not expecting to find anyone living in the building, and when they

8   encountered the plaintiff, she asked to see the search warrant.  The agents did not provide her with a

9   copy of the warrant because they had left it in the car.  When the plaintiff repeated her request to see

10  the warrant, the defendant "grabbed her by the arms, forcibly threw her to the ground and, twisting

11  her arms, placed handcuffs on her wrists."  *Id.* at 1060.  The plaintiff alleged "the handcuffs were

12  closed around her wrists so tightly that they caused her pain, and that she suffered extensive bruising

13  by the force used against her."  *Id.*  The defendant made the plaintiff sit on a nearby couch with the

14  handcuffs on while the agents completed their search.  The plaintiff "complained several times that

15  the handcuffs were too tight and were causing her pain, but for 30 minutes they were left as they were;

16  thereafter, they were loosened so that they would not cause pain, but would nonetheless restrain her."

17  *Id.*  Several hours later, the handcuffs were removed.  On these facts, the district court denied the

18  defendant's motion for summary judgment based on qualified immunity, and the Ninth Circuit

19  affirmed that decision with respect to her excessive force claim.  It found the plaintiff had

20  demonstrated a violation of the Fourth Amendment, and "a reasonable agent in [the defendant's]

21  position would have known that such conduct violated the Fourth Amendment."  *Id.* at 1061.

22       This case is similar to *Meredith* in one important respect, namely that in both cases, the

23  plaintiffs complained that they were in pain from the handcuffs.  However, that single, common

24  feature does not mean that it would have been clear to a reasonable officer in Defendant Silva's

25  situation that his conduct was unlawful.  In other words, there is no clearly established right to have

26  handcuffs  loosened or removed simply because a complaint of pain is made.  For instance, in *Tibbs

27  v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), an arrestee complained to the defendant-officer that

28  his handcuffs were too tight, but the defendant failed to loosen them and waited twenty-five minutes

before removing them. *Id.* at 663. Like Plaintiff here, the plaintiff in *Tibbs* "experienced minimal (if any) injury, and sought no medical care." *Id.* at 666. On those facts, the court found "no reasonable jury could find Officer Kooistra's actions were objectively unreasonable." *Id.* Similarly, in *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997), the court found the defendants were entitled to qualified immunity from an excessive force claim where the plaintiff "experienced pain from the handcuffs for roughly twenty minutes and that [he] suffered only skin abrasions for which he did not seek medical treatment." *Id.* at 1446. The present case is more akin to *Tibbs* and *Gold*, and lead this Court to conclude that it would not have been clear to a reasonable officer in Defendant Silva's situation that the application and continued use of the handcuffs was unlawful.

The same cannot be said, however, of the removal of Plaintiff's handcuffs. Plaintiff alleges Defendant Silva "jerked [Plaintiff's] hands up against a joint because they didn't feel like bending over. ... They took my hands in the back and jerked them up almost to the middle of my back." (Decl. of Katherine L. Parker in Supp. of Mot. ("Parker Decl."), Ex. A at 9.) At that point, accepting Plaintiff's evidence in the light most favorable to him, he was not suspected of committing any crime, he posed no threat to the officers, and he was not resisting arrest or attempting to flee. Under these circumstances, it would have been clear to a reasonable officer that the force used to remove Plaintiff's handcuffs was unreasonable.

In sum, the Court finds it would not have been clear to a reasonable officer in Defendant Silva's situation that the use of handcuffs was unlawful. However, it would have been clear to that same reasonable officer that the use of force in *removing* the handcuffs was unreasonable. Accordingly, Defendant is entitled to qualified immunity from Plaintiff's claim that the use of handcuffs violated the Fourth Amendment, but he is not entitled to qualified immunity on the removal of the handcuffs.

### 3.   Medical Care and Treatment

Plaintiff's final claim alleges Defendant Silva failed to provide medical treatment to Plaintiff in violation of due process. Defendant argues he is entitled to qualified immunity from this claim because there is no clearly established right to medical treatment for persons who have not been taken into custody, and Plaintiff has failed to show he had a serious medical need.

Assuming Plaintiff had a constitutional right to medical treatment under the circumstances of this case, the test for his due process claim would be the same as that under the Eighth Amendment, namely, did Defendant Silva exhibit deliberate indifference to Plaintiff's serious medical needs. *Castaneda v. United States*, 546 F.3d 682, 688 (9th Cir. 2008). A "serious" medical need exists "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010) (quoting *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994)).

In this case, Plaintiff does not allege that the failure to provide him medical care resulted in "further significant injury." Indeed, Plaintiff testified that his shoulder pain stopped within thirty minutes of his release. (Parker Decl., Ex. A at 12-13.) Plaintiff does argue that the failure to provide him with medical care resulted in the "unnecessary and wanton infliction of pain," but the evidence does not support that argument. Rather, the evidence reflects that Plaintiff's shoulder pain resolved shortly after the handcuffs were removed, and without any medical intervention whatsoever. (*Id.*) Under these circumstances, Plaintiff has not shown that he had a "serious medical need" sufficient to sustain a due process claim. *See Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (finding claimed seriousness of plaintiff's injuries and any adverse effect from not receiving medical attention was undermined by undisputed fact that plaintiff failed to keep appointment at medical clinic five days after incident). Absent the showing of a constitutional violation, Defendant is entitled to qualified immunity from this claim.

### III.

### CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's motion for summary judgment. Specifically, the Court grants the motion as to Plaintiff's unlawful seizure and inadequate medical care claims. The Court also grants the motion as to the excessive force claim as it relates to the use of the handcuffs. As for the removal of the handcuffs, the motion is denied.

**IT IS SO ORDERED**.

DATED: March 16, 2010

_____
HON. DANA M. SABRAW
United States District Judge